IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 18-cv-00434-ELH |
| 200 WEST CHERRY STREET, LLC, et al. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Nautilus Insurance Company ("Nautilus") moves pursuant to F.R.Civ.P. 56 for summary judgment in its favor and against Defendants.[1]

In its Complaint, Plaintiff seeks a declaration that the liability insurance policy issued by Nautilus to 200 West Cherry Street, LLC, d/b/a Nauti-Goose Saloon ("Nauti-Goose") does not obligate Nautilus to defend or indemnify Nauti-Goose for claims made by William King, Jr. in the case of *King v. 200 West Cherry Street, LLC, et al.*, Circuit Court for Cecil County, Case No. 07-C-16-000229 (the "Underlying Case"). There is no genuine dispute as to any material fact on the issue of whether coverage for the claims is excluded under the policy, and Nautilus is entitled to judgment as matter of law.

## Facts

This declaratory judgment action arises out of the claims set forth in the Second Amended Complaint filed in the Underlying Case. (Exhibit 1) William King was a patron at a bar known as the Nauti-Goose Saloon in Cecil County on August 23, 2013. He alleges that he

---

[1] An Order of Default has already been entered against Defendant Richard Woollens.

was attacked and injured without provocation by Richard Woollens, an off-duty Maryland State police officer who was providing private security services to Nauti-Goose Saloon. (Exh. 1, ¶¶ 14-17)

Although some claims in the Second Amended Complaint were dismissed at an early time in the litigation, the case proceeded on claims alleging that Nauti-Goose Saloon and Woollens were liable for:

> Count 1 – Battery, alleging that Woollens, serving as an agent, servant or employee of Nauti-Goose, engaged in intentional acts of unlawful conduct and used unreasonable, unlawful and excessive force;
>
> Count 4 - Gross Negligence, alleging that the defendants engaged in intentional, willful, and wanton conduct with reckless disregard for human life;
>
> Count 10 - Negligent Security, alleging that as owners, managers, operators, and security providers of the premises each defendant had a duty of care to provide safe and adequate security at the premises;
>
> Count 11 - Negligent Hiring, Training, Retention or Supervision, alleging that as owners, managers, operators and security providers for the premises, Nauti Goose had a duty to the plaintiff to use reasonable care in the selection, training and supervision of Woollens as a security officer employee;
>
> Count 12 - Negligence Failure to Warn, alleging that Nauti-Goose failed to warn plaintiff about Woollens' propensity for violence; and
>
> Count 13 - Negligent Misrepresentation, alleging that Nauti-Goose negligently made statements that the premises were safe when it had knowledge of Woollens' propensity for violence.

The Underlying Complaint alleges that William King was severely injured by the interaction with Woollens. (Exh. 1, ¶ 19)

On January 4, 2018, the Circuit Court for Cecil County granted summary judgment to all defendants in the Underlying Case. On January 16, 2018, King filed a Notice of Appeal of the Underlying Case to the Court of Special Appeals. That appeal remains pending.

Nautilus issued a Commercial Lines Policy of insurance to 200 West Cherry Street, LLC, Policy Number NN316174, effective dates March 12, 2013 through March 12, 2014 ("the Policy"). (Exhibit 2, relevant portions of the Policy.) Nautilus has been defending Nauti-Goose pursuant to a reservation of rights but denies any obligation to continue that defense or indemnify Nauti-Goose.

## The Policy Terms

The Commercial General Liability Form (the "CGL Form") of the Policy provides in relevant part as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

b.    This insurance applies to "bodily injury" or "property damage" only if:

> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

The CGL Form contains the following relevant exclusions applicable to: **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; . . .

The CGL Form contains the following relevant definition of Insured:

> **Section II – Who Is An Insured**
> 1. If you are designated in the Declarations as:
> . . .
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds but only with respect to their duties as your managers.
>
> Each of the following is also an insured:
> a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" . . ., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

The CGL Form contains the following relevant endorsement:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**
>
> **EXCLUSION-ALL ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is **added to 2. Exclusions of Section** I - **Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability,** and **Coverage C. - Medical Payments:**

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

**1.** Actual or alleged assault or battery;

**2.** Physical altercation; or

**3.** Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

**1.** Insured;

**2.** "Employee";

**3.** Patron; or

**4.** Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

**1.** All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

**2.** Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

**a.** Emotional distress for loss of society, services, consortium or income; or

**b.** Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

**3.** Any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.** We will have no duty to defend or indemnify any insured in any action or

5

proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

**Legal Standard**

Rule 56 mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Recognizing the crucial nature of the plaintiff's burden of proof, the Supreme Court has stated: "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

**Argument**

A federal district court sitting in diversity applies the law of the forum state in which the court sits. *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.,* 433 F.3d 365, 369 (4th Cir. 2005). In determining coverage under an insurance policy, the court must initially focus on the terms of the insurance policy to determine the scope and limitations of its coverage. *Chantel Associates v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995). *See Mitchell v. Maryland Casualty,* 324 Md. 44, 56, 595 A.2d 469, 475 (1991) (stating that in a declaratory judgment action brought to determine coverage under an insurance policy, "'it is the function of the court to interpret the policy and decide whether or not there is coverage' ") (quoting *St. Paul Fire & Mar. Ins. v. Pryseski,* 292 Md. 187, 194, 438 A.2d 282, 286 (1981)); *Mutual Fire, Marine & Inland Ins. v. Vollmer,* 306 Md. 243, 250, 508 A.2d 130, 133 (1986).

The coverage provided by the policy must then be matched to the allegations of the complaint. In *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975), the court

stated: "The obligation of an insurer to defend its insured under a contract provision ... is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." 276 Md. at 407-08, 347 A.2d at 850.  As addressed below, there is no potentiality that any of the allegations in the Underlying Case would be covered by the Policy.

Under Maryland law, if a contract is not ambiguous, it is to be interpreted by its terms. Insurance policies are construed like any other contract. *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 95, 699 A.2d 482 (1997). "The 'first principle of construction of insurance policies in Maryland is to apply the terms of the contract.'" 117 Md. App. at 96. "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer.  Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 166, 702 A.2d 767, 771 (1997).  The court is to give the words of the contract "their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense." *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208 (2006); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533 (2000).

   1. **Nautilus has no duty to defend or indemnify Nauti-Goose under Coverage A.**

King's allegations in the Underlying Case are not an "occurrence" because the actions by Trooper Woollens were not an accident. **Coverage A** applies only where there is, *inter alia*,

"bodily injury" caused by an "occurrence." The Policy defines "occurrence," as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the Policy does not then define "accident," the Court of Appeals has reviewed in depth the varying interpretations and applications of that word as it pertains to lability insurance and has settled on how it will be interpreted in Maryland: "[W]e hold today that an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.' In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an "accident" under a general liability policy." *Sheets v. Brethren Mutual Insurance Co.*, 342 Md. 634, 652, 679 A.2d 540, 548 (1996)(citations omitted).

The allegations of the Underlying Case do not demonstrate even a possibility of an occurrence or an accident because they allege that Trooper Woollens intentionally and without provocation slammed King to the ground.

Further, the allegations fall squarely within Exclusion **a. Expected Or Intended Injury** because King asserts that Woollens had a history of and propensity to use excessive and unlawful force, that he did so in his actions toward King, and that Nauti-Goose was aware of that propensity and allowed him to engage in that excessive force. (Exh. 1, ¶¶ 21-22) Consequently, those allegations preclude coverage under **Coverage A** of the Underlying Complaint and Nautilus has no duty to defend or indemnify Nauti-Goose or Woollens in connection with the Underlying Complaint.

> 2. <u>The plain language of the All Assault or Battery Exclusion excludes coverage for the claims asserted by William King.</u>

The Policy unambiguously excludes coverage for claims of bodily injury that arise from an assault or battery or a physical altercation, regardless of the cause of action by which such

liability is alleged. It is undisputed that the incident in which Mr. King was injured is alleged to have been caused by Trooper Woollens' battery of him or, at minimum, a physical altercation between the two of them. Consequently, Nautilus does not owe contractual obligations to Nauti-Goose or Woollens.

There is no genuine dispute that the allegations and claims made by William King in the Underlying Case arise wholly from a battery or a physical altercation. Mr. King unequivocally alleges that Trooper Woollens committed a battery against him when he picked him up and slammed him into the ground, without provocation.

King further unequivocally alleges in the Underlying Case that Woollens engaged in a physical altercation with him. The Policy does not define "physical altercation," but under Maryland law the court is to give the words of the contract "their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense." *State Farm Mutual Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208 (2006); *Cole v. State Farm Mutual Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533 (2000). The word "altercation" is defined by Merriam-Webster as a "noisy, heated, angry dispute" and by The Cambridge English Dictionary as "a loud argument or disagreement." Black's Law Dictionary defines "altercation" as "a dispute or fight." The inclusion of the word "physical" before "altercation" in the Policy likely brings the phrase within the latter definition for the Policy intent. King alleges that there was an argument between his friends and Nauti-Goose's security personnel and that, as he approached his friends, he was pushed by the security personnel and then battered by Trooper Woollens, actions which are indisputably a physical altercation.

Consequently, the allegations of the Underlying Case fall within the unambiguous terms of the All Assault or Battery Exclusion and preclude coverage for the allegations.

On the basis of the allegations in the Underlying Case, there is no basis on which Nautilus owes any obligations of defense or indemnity to Nauti-Goose or Trooper Woollens and Plaintiff Nautilus is entitled to judgment as a matter of law.

### 3. Nauti-Goose must reimburse Nautilus for the costs of defending the non-covered claims.

An insurer does not have an obligation to defend its insured if the allegations of the Complaint do not raise a potentiality of coverage. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975). Once there is an adjudication that a case contains both covered and non-covered claims, it is the insured's burden to prove the defense costs associated with the covered claims for which an insurer will have an obligation of payment. *Continental Casualty Co. v. Board of Education of Charles County*, 302 Md. 516, 528, 489 A.2d 536, 542 (1985). Here, Nautilus has proven that none of the claims made by King in the Underlying Case were covered by the Policy. Nautilus nevertheless has undertaken and paid for Nauti-Goose's defense and is entitled to be reimbursed for the costs of that defense.

### Conclusion

Nautilus respectfully requests that the Court enter judgment in its favor and against 200 West Cherry Street, LLC, Richard Woollens, and William King, Jr. and declare the following:

1. Nautilus Insurance Company has no duty to indemnify 200 West Cherry Street, LLC or Richard Woollens under the Policy in connection with any damages awarded to William King, Jr.

2. Nautilus Insurance Company has no duty to defend 200 West Cherry Street, LLC or Richard Woollens.

3.        200 West Cherry Street, LLC must reimburse Nautilus Insurance Company for the cost of defending the claims made in the Underlying Complaint.

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
Ward & Herzog, LLC
102 W. Pennsylvania Avenue, Suite 401
Baltimore, MD 21204
410-296-1573
mward@wardherzog.com
***Attorneys for Plaintiff***

## REQUEST FOR HEARING

Defendant requests a hearing on its Motion for Summary Judgment.

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of July, 2018, a copy of the foregoing Motion for Summary Judgment was mailed to:

RICHARD WOOLLENS
Maryland State Police
Barrack F-North East
2433 Pulaski Highway
North East, MD 21901

and electronically filed to:

Kathleen M. McDonald, Esquire
Kerr McDonald, LLP
111 S. Calvert Street
Suite 1945
Baltimore, MD  21202

Jason Downs

Downs Collins, P.A.
20 S. Charles Street
Suite 901
Baltimore, MD 21202

                                         */s/ Margaret Fonshell Ward*
                                         Margaret Fonshell Ward