IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAUTILUS INSURANCE COMPANY
*Plaintiff*,

v.

200 WEST CHERRY STREET, LLC,
d/b/a Nauti-Goose Saloon, *et al.*
*Defendants*.

Civil Action No. ELH-18-434

## MEMORANDUM OPINION

In this insurance dispute, plaintiff Nautilus Insurance Company ("Nautilus") has filed a declaratory judgment action against defendants 200 West Cherry Street, LLC, d/b/a Nauti-Goose Saloon ("200 West" or the "Saloon"); Richard Woollens; and William King, Jr. ECF 1 ("Complaint").[1] In Count One, Nautilus seeks a declaration that it "has no duty to defend or indemnify 200 West or Woollens" under a Commercial Lines Policy (the "Policy") that it issued to 200 West, which covered the period from March 12, 2013, to March 12, 2014. In Count Two, Nautilus seeks a declaration that it has no duty under the Policy to defend or indemnify "as a result of the assault or battery exclusion" under the Policy.[2] Subject matter jurisdiction is founded on diversity of citizenship. *See Id.* ¶ 9.

The case is rooted in litigation arising from a tort suit filed by King in February 2016, in the Circuit Court for Cecil County against 200 West, Woollens, and several others. *See King v. Nauti-Goose Saloon*, No. 07-C-16000229 (Cir. Ct. for Cecil Cty. Feb. 10, 2016); *see also* ECF 1-1

---

[1] On April 26, 2018, the Clerk entered a default as to Woollens. ECF 21.

[2] In Count Three, Nautilus sought a declaration that 200 West "is obligated to reimburse Nautilus for the costs of defending claims that were not even potentially covered." ECF 1 at 9. But, Nautilus stipulated to the dismissal of this count on August 13, 2018. ECF 28.

(the "Tort Suit"). King alleged that Woollens, a 200 West employee, assaulted King on August 24, 2013, after King left the Saloon. ECF 1-1, ¶¶ 12, 16, 17.

Nautilus has moved for summary judgment (ECF 23, the "Motion"), supported by two exhibits. ECF 23-1; ECF 23-2. Saloon opposes the Motion (ECF 30, the "Opposition") and submitted four exhibits. ECF 30-1 to ECF 30-4. Plaintiff has replied. ECF 31 ("Reply").

The Motion is fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Factual Summary

### A.    The Tort Litigation

The Saloon is a restaurant and bar with its principal place of business located in Cecil County, Maryland. ECF 1-1, ¶ 5. At the relevant time, Woollens was an off-duty Maryland State Police officer, providing private security services for 200 West. *Id.* ¶¶ 8, 14; ECF 1, ¶ 11. King was a patron of the Saloon.

On February 10, 2016, in the Circuit Court for Cecil County, King filed the Tort Suit, alleging claims against Woollens; 200 West; TTS Properties, Inc.; Anchor Boats, Inc.; Marcus Brown, individually and in his capacity as former Superintendent of the Maryland State Police; the Maryland State Police; and the State of Maryland. *See* ECF 1-1.[3] The Tort Suit contained thirteen counts, but it proceeded only as to six of them: "Battery" (Count I); "Gross Negligence" (Count IV); "Negligence – Security" (Count X); "Negligence: Hiring, Training, Retention, and/or Supervision" (Count XI); "Negligence – Failure to Warn" (Count XII); and "Negligence –

_____

[3] Nautilus was not named as a party in the underlying Tort Suit. ECF 1-1.

Negligent Misrepresentation" (Count XIII). ECF 1, ¶ 12; *see also* ECF 1-1. Nautilus defended

200 West in the Tort Suit, retaining Eccleston & Wolf as defense counsel. *See* ECF 30 at 3.

In the Tort Suit, King alleged that on the night of August 23, 2013, he and several friends

went to the Saloon. ECF 1-1, ¶¶ 4, 12. At about 12:45 a.m. on August 24, 2013, a member of

Saloon security allegedly asked King's friend to leave the bar. *Id.* ¶ 13. King's friend left, and

King followed. *Id.* ¶ 13. King claimed that when he arrived in the parking lot, his friends were

arguing with the Saloon's security personnel, including Woollens. *Id.* ¶ 14. According to the Tort

Suit, Woollens, an off-duty police officer working security for 200 West, wore his Maryland State

Police badge and carried a firearm and handcuffs. *Id.* ¶ 15. He also identified himself as a

Maryland State Trooper. *Id.*

King asserted that he was unarmed and posed no threat. *Id.* ¶ 16. Nevertheless, when he

started walking toward his friends, he was pushed to the ground by the Saloon's security personnel.

*Id.* Further, King asserts that when he stood up, Woollens grabbed him, lifted King above

Woollen's head, and "swiftly slammed [King's] head to the concrete pavement," with "such force

that patrons located more than one hundred feet away – on the lower deck inside of the restaurant

- heard the thud." *Id.* ¶ 17. As a result, King was knocked unconscious. *Id.* While King lay

bleeding on the concrete, Woollens handcuffed him. *Id.* ¶ 18.

King suffered "catastrophic injuries. *Id.* ¶ 19. These included "a fractured bone in the

[right] side of his skull, a fractured plate in the middle of his skull, a fractured in [sic] right eye

socket, a fractured bone in the rear area of the side of his skull, a concussion, severe bleeding

behind his skull, and severe mental anguish." *Id.*

King "was charged with second degree assault, trespass, disorderly conduct, failure to

obey, and resisting arrest in Cecil County District Court case number 4K00065839, *State of*

*Maryland v. William King*." *Id.* ¶ 20. He received a sentence of probation before judgment on

April 20, 2015. *Id.* Therefore, there was no imposition of a judgment of conviction. *Id.*

In the course of litigation in the Tort Suit, the Saloon and other defendants moved for

summary judgment. Of relevance here, in its "Memorandum of Law in Support of Motion for

Summary Judgment" (ECF 30-2) ("Memorandum"), 200 West disputed King's version of events,

stating, ECF 30-2 at 6-7:

> Plaintiff ignored [Woollens'] orders to leave and instead went towards TFC
> Woollens in an aggressive manner, and stated, "I don't care if you're a cop, I'll stab
> you." [Exhibit No. 12, Affidavit of Richard A. Woollens, ¶ 6]. This statement gave
> TFC Woollens concern that Plaintiff had a concealed knife or sharp weapon. *Id.*
> That fact, coupled with Plaintiff's aggressive behavior, his intoxication, and the
> large number of people in the vicinity led TFC Woollens to believe Plaintiff would
> harm him or other people at the scene. *Id.*
>
> Fearing for his safety and others, TFC Woollens wrapped his arms around
> Plaintiff in order to prevent the threatened assault. *Id.* at ¶7. TFC Woollens realized
> that the only way to gain control of Plaintiff in a safe manner was to execute a
> takedown, and therefore, he executed a take-down technique to take Plaintiff down
> to the ground. *Id.* . . .
>
> During the takedown, Plaintiff sustained a head injury; TFC Woollens had
> no intent to cause an injury, only to take Plaintiff down as a quickly as possible to
> prevent him from causing an injury to those at the scene. *Id.* at ¶8.

Judge Keith A. Baynes, of the Circuit Court for Cecil County, presided at the hearing on

the motions for summary judgement. *See* ECF 30-4. At the close of the hearing, he issued an oral

ruling (*id.* at 39-41), granting the motions (ECF 30-4). Judge Baynes stated, *id.* at 39-40:

> [T]he Court does find looking at the evidence in the light most favorable to
> the plaintiff [i.e., King] that there's really not any dispute as to material fact and the
> Court does believe that the force used by the officer [i.e., Woollens] was reasonable
> based upon the conduct and language of the plaintiff at the time of the events. . . .
> [U]sing the reasonable officer standard, again, the Court finds that the conduct of
> the officer was reasonable based upon the threat that was immediately apparent.

*See also* ECF 30-3 (Judge Baynes's orders granting summary judgment to defendants).

King noted an appeal to the Maryland Court of Special Appeals. ECF 30 at 5-6; *see also King* v. *Nauti-Goose Saloon*, No. 17-2183 (Md. Ct. Spec. App.). And, Nautilus has continued to defend 200 West in the appeal, pursuant to a reservation of rights letter (ECF 30-1), dated November 22, 2016. *See* ECF 30-2 at 3 n.2.

### B. The Insurance Policy

As noted, Nautilus's request for declaratory judgment arises out of a Commercial Lines Policy of insurance issued to 200 West. *See* ECF 23-2. The Policy was in effect, and covered 200 West and its employees, from March 12, 2013 through March 12, 2014. *Id.* at 1, 11-12.

The Policy contains two sections relevant to coverage in this case: (1) Coverage under the "Commercial General Liability ["CGL"] Coverage Form," *id.* at 4-18 (the "CGL Form") and (2) an endorsement modifying the Policy, titled "EXCLUSION – ALL ASSAULT OR BATTERY." *Id.* at 19 (the "Battery Exclusion").

The CGL Form of the Policy provides, in relevant part, *id.* at 4:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
                                        * * *
   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

Thus, under the Policy, Nautilus covers damages resulting from a "bodily injury" caused by an "occurrence," but does not have a duty to "defend the insured against any 'suit' seeking

damages for 'bodily injury' . . . to which this insurance does not apply." *Id.* Under the Policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at 15. And, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 17. However, it does not appear that the Policy defines "accident." *See id.*

The CGL Form also contains an "exclusion" for expected or intended injuries. *Id.* at 5 ("Expected or Intended Injury Exclusion"). It states, *id.*:

**2. Exclusions**
This insurance does not apply to:

**a. Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

As a result of this exclusion, the Policy does not cover a bodily injury that the insured "expected or intended." *Id.* However, the Exclusion does not apply if the injury resulted "from the use of reasonable force to protect persons or property." *Id.* (the "Reasonable Force Exception").

The CGL Form contains the following relevant endorsement modifying the Policy, *id.* at 19 (the "Battery Exclusion"):

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION-ALL ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is **added** to **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability,** and **Coverage C. - Medical Payments:**

Regardless of culpability or intent of any person, this insurance does not apply to

"bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

1. Actual or alleged assault or battery;
2. Physical altercation; or
3. Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1. Insured;
2. "Employee";
3. Patron; or
4. Any other person; and
whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

1. All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

2. Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

a. Emotional distress for loss of society, services, consortium or income; or
b. Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

B. We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

### III.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The nonmoving party must demonstrate that there is a dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

In sum, to avoid summary judgment, there must be a genuine dispute as to material fact. In *Iraq Middle Mkt. Dev. Found.*, 848 F.3d at 238, the Court reiterated: "A court can

grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."

## IV. Choice of Law

The parties assume, without discussion, that Maryland law applies to this diversity case. In an action based upon diversity of citizenship, a federal court must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648-49 (2007); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *see also Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Property Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

"Typically, '[t]he *locus contractus* of an insurance policy is the state in which the policy is delivered and the premiums are paid,'" *Porter Hayden*, 116 Md. App. at 673, 698 A.2d at 1200 (citation and some internal quotation marks omitted). This is because delivery of the policy and

payment of the premium are ordinarily the last acts necessary to make an insurance policy binding. *See Aetna Cas. & Sur. Co. v. Souras,* 78 Md. App. 71, 77, 552 A.2d 908, 911 (1989).

The Policy does not appear to contain a choice of law clause. *See* ECF 1-1. Nor is it clear that the Policy was executed in Maryland (ECF 1-3), although the premises is located in Maryland. "However, because the parties implicitly agree that Maryland law governs their claims, [the Court] need not inquire further into the choice-of-law questions." *Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323 (Table) at *2 n.2 (4th Cir. 2000) (citing *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.")). Accordingly, I shall apply the substantive law of Maryland.

## V. Abstention

The Saloon urges this Court to abstain from entertaining Nautilus's declaratory judgment action because of the appeal in the Tort Suit, which is pending in the Maryland Court of Special Appeals.

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Nevertheless, when jurisdiction is established, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2000). Although the Supreme Court has identified some situations in which, for reasons of comity, federalism, or other prudential concerns, federal courts may abstain from exercising jurisdiction, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

When there are "parallel federal and state suits" but no "traditional grounds for abstention" apply, a stringent "exceptional circumstances" standard ordinarily governs a federal court's decision whether to abstain from exercising jurisdiction. *Chase Brexton Heath Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (analyzing *Colorado River*). In other words, even where there is parallel state and federal litigation, "'[a]bdication of the obligation to decide cases'" is justified only in "'exceptional circumstances.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citations and some internal quotation marks omitted).

However, as the Supreme Court reaffirmed in *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 286 (1995), district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." In other words, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their discretion yields to considerations of practicality and wise judicial administration." *Id.* at 288. This is because the Declaratory Judgment Act, 28 U.S.C. § 2201, which is the source of a federal court's authority to issue a declaratory judgment, has been understood, "[s]ince its inception," to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Indeed, the Declaratory Judgment Act contains a "textual commitment to discretion": it provides that a court "'*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Wilton*, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)) (emphasis in *Wilton*); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, of import here, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in state court, "a district court may either stay the

suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "'remanding it to state court.'" *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

The inherent discretion of a federal court to abstain from entertaining a declaratory action is often referred to as *Wilton/Brillhart* abstention or *Wilton* abstention. The *Wilton* abstention doctrine implicates the court's own interests in judicial economy, "practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

In general, the Fourth Circuit has said that "'a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."'" *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996), in turn quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 325 (4th Cir. 1937)) (alteration in *Coffey*). However, "[w]hen a related state court proceeding is pending," such as King's tort suit against 200 West and others, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise discretion over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (citations and some internal quotation marks omitted).

In a number of cases decided in the wake of *Wilton*, the Fourth Circuit has elucidated and applied several factors to guide district courts in the exercise of their discretion whether to abstain from issuing a declaratory judgment. *See, e.g.*, *Gross*, *supra*, 468 F.3d 199; *New Wellington Fin. Corp. v. Flagship Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005); *Coffey*, 368 F.3d 409; *Myles Lumber*, 233 F.3d 821; *Kapiloff*, 155 F.3d 488; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419

(4th Cir. 1998). The factors are often called the "*Kapiloff* factors" or the "*Ind-Com* factors," deriving from the cases decided soon after *Wilton*.[4] In balancing the factors, "'[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.'" *Ind-Com*, 139 F.3d at 423 (citation omitted). It "should be a significant factor in the district court's determination," but it "is not dispositive." *Id.*

If *Wilton* abstention is available for the entire case, a court need not apply the more stringent *Colorado River* "exceptional circumstances" test. *See Gross*, 468 F.3d at 210-11. Therefore, before applying the *Kapiloff* factors, I must consider whether this case qualifies as a purely declaratory action, to which *Wilton* abstention, guided by the *Kapiloff* factors, may apply.

The Fourth Circuit has made clear that "the *Brillhart/Wilton* standard [of discretionary abstention] does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief." *Gross*, *supra*, 468 F.3d at 211. The Court explained: "Because a court is required to address nondeclaratory claims, . . . the benefit derived from exercising discretion not to grant declaratory relief is frustrated" in such a case. *Id.*

Here, plaintiff's complaint seeks only declaratory relief. *See* ECF 1 at 8-10. Therefore, I am satisfied that the Court is vested with discretion under *Wilton* to abstain from exercising

_____

[4] Several of the factors articulated in *Kapiloff* and *Ind-Com* were drawn from an earlier case, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). But, the Fourth Circuit has recognized that one aspect of *Nautilus* was overruled by the Supreme Court in *Wilton*: the *Nautilus* Court had balanced the factors itself, applying an "essentially 'de novo'" standard of review to the district court's decision to abstain from exercising jurisdiction over a declaratory action. *Nautilus*, 15 F.3d at 375 (citation omitted). However, the Supreme Court ruled in *Wilton* that such a decision must be reviewed only "for abuse of discretion." *Wilton*, 515 U.S. at 290; *see Poston*, *supra*, 88 F.3d at 257 (while reaffirming use of factors articulated in *Nautilus*, stating: "To whatever extent our previous decisions have implied further constraints on district court discretion [to abstain from exercising jurisdiction over a declaratory action], *see, e.g.*, *Nautilus*, . . . those decisions must give way to the clear teachings of *Wilton*.").

jurisdiction in this case. Accordingly, to make that discretionary determination, I must apply the

*Kapiloff* factors, to which I now turn.

In *Kapiloff*, 155 F.3d at 493-94 (internal citations omitted), the Fourth Circuit said:

[D]istrict courts are not without guidance in exercising [their] discretion. We have explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account "considerations of federalism, efficiency, and comity." To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

As to the first factor, this case involves interpretation of an insurance contract, as it applies

to the underlying Tort Suit, which alleges battery and five counts of negligence, and is on appeal

in a Maryland State court. *See* ECF 1-1. The declaratory action here concerns the duty to defend

and indemnify, which turn on Maryland law. To that extent, there is a State interest in the

resolution of the issues. However, state interests are "not particularly significant" when the state

law issues are "standard" matters of "agency and contract interpretation," because a "federal court

would be unlikely to break new ground or be faced with novel issues of state interest." *Kapiloff*,

155 F.3d at 494.

In *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d at 378, the Fourth Circuit said that,

in order for a state's interest to "weigh against the exercise of federal jurisdiction," the questions

of law must be "difficult" or "unsettled"; that is, they should involve more than "the routine

application of settled principles of law to particular disputed facts." (citing *Mitcheson v. Harris*,

955 F.2d 235, 237 (4th Cir, 1992)); *see also Kapiloff,* 155 F.3d at 494; *Poston*, 88 F.3d at 258;

-15-

*Hartford Cas. Ins. Co. v. Wugin*, 247 F. Supp. 2d 723, 727 (D. Md. 2003). Accordingly, I cannot say that Maryland's interest weighs against the exercise of federal jurisdiction.

The second factor is "whether the state courts could resolve the issues more efficiently than the federal courts." *Kapiloff*, 155 F.3d at 494. The Saloon has not articulated any reason why this Court cannot resolve this litigation. Indeed, pursuant to its diversity jurisdiction, this Court routinely decides issues of Maryland law.

"In evaluating . . . efficiency concerns, courts focus on 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the [pending state] proceeding.'" *AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 745 (D. Md. 2013) (quoting *Brillhart*, 316 U.S. at 495) (alterations in *AMEX*). The issues raised in this federal action—*i.e.*, the interpretation of the Policy, including the applicability of exclusions from coverage under the Policy—will not be addressed in the pending appeal. Because disposition of the pending appeal will not resolve all issues between the parties, this factor weighs against abstention.

The third factor concerns "whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts." *Kapiloff*, 155 F.3d at 494. "The concern about entanglement turns on what preclusive effect the declaratory judgment action will have on the state action." *Hartford Cas. Ins. Co.*, 247 F. Supp. 2d at 727 (citing *Mitcheson*, 955 F.2d at 239-40); *see also Kapiloff*, 155 F.3d at 494 ("[S]ince both actions raise the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance Policy, potential entanglement between the state and federal courts was a genuine possibility.").

Here, there are a limited number of factual and legal issues that are intertwined with the pending appeal, but this is not an "unnecessary entanglement." The declaratory action before this

Court, however, involves the litigation of issues different from those in the pending State tort appeal. This action is concerned with determining the rights and obligations of Nautilus under the Policy, which are at issue in the pending appeal. And, there is no separate pending State declaratory action in this matter. In other words, there is no "parallel state action." *Kapiloff*, 155 F.3d at 494. This Court's interpretation of the Policy, the scope of coverage, and the determination of Nautilus's duties under the Policy will not preclude the State court from determining whether the Circuit Court for Cecil County erred in granting summary judgment in favor of the defendants in the Tort Suit. Thus, the third factor also weighs against abstention, because the actions do not raise the same core issues of law and fact.

The fourth factor is "whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping." *Kapiloff*, 155 F.3d at 494. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Gross*, 468 F.3d at 212. Pursuant to diversity jurisdiction, Nautilus had the right to bring its case in this Court. The issues in this declaratory judgment action are not pending before a state court, and there is no indication that Nautilus filed the action in this Court to obtain a more favorable forum, because Maryland law is controlling in both forums. Nautilus's conduct, therefore, does not constitute forum shopping.

On balance, the *Kapiloff* factors do not persuade me to exercise my discretion under *Wilton* so as to abstain from resolving this case at the appropriate time.

The Fourth Circuit case of *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's*, 788 F.3d 375 (4th Cir. 2015), lends support to my decision. There, the plaintiff, the insured, brought suit in federal court in Maryland based on diversity jurisdiction, seeking a

declaratory judgment that the insurer was obligated to defend and indemnify the insured against the underlying negligence lawsuit filed in the Superior Court for the District of Columbia. *Id.* at 377. Neither the district judge nor the Fourth Circuit had any difficulty in addressing applicable Maryland law to resolve the issues.

Similarly, *State Farm & Fire Casualty Co. v. Baker*, JFM-14-3293, 2015 WL 5723254 (D. Md. Sept. 24, 2015), is an insurance case filed by State Farm, the insurer, in this District, based on diversity jurisdiction. There, the insured was convicted of second-degree assault in connection with injuries she inflicted on a one-year-old child for whom she was providing child care. *Id.* at *1. The child's mother brought a civil suit against the childcare provider in a Maryland state court, asserting claims for battery, infliction of emotional distress, and negligence. *Id.* The insurer filed a declaratory judgment action in federal court, seeking a declaration that it had no duty to defend or indemnify the insured in the underlying tort suit. *Id.* Of import here, Judge Motz did not decline to consider the case. To the contrary, he considered the merits in the context of a summary judgment motion filed by the insurer and denied the insurer's motion.

## VI.     Duty to Defend and to Indemnify

Nautilus seeks a declaration that it has no duty to defend or indemnify 200 West or Woollens, because King's injuries resulted from a physical alteration or battery, not an accident. *See* ECF 23 at 7-10. However, 200 West claims that although Woollens intentionally took down King, Woollens used reasonable force, and the resulting injuries were accidental. ECF 30 at 11, 13, 14. The Saloon also argues that a declaration regarding Nautilus's duty to indemnify 200 West is premature, in light of the pending State court appeal with respect to the Tort Suit. *Id.* at 18-19.

Of import here, an insurer's "duty to defend is distinct conceptually from its duty to indemnify, *i.e.*, its obligation to pay a judgment." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15,

852 A.2d 98, 106 (2004). This is because an "insurance company has a duty to defend its insured for all claims that are *potentially* covered under the policy." *Id.* (emphasis added); *see Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 407-08, 347 A.2d 842, 850 (1975). The duty to indemnify, however, is triggered only if the insured's established liability is *actually* covered under the policy. In other words, "the duty to defend depends only upon the facts as alleged" in a tort suit, whereas "the duty to indemnify depends upon liability," so "the duty to defend is broader than the duty to indemnify." *Walk*, 382 Md. at 15, 842 A.2d at 106.

### A. Principles of Contract Construction

In the federal courts, declaratory judgments are authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides, with exceptions not relevant here that, in "a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." Because the parties' rights and obligations in this case arise under the Policy, resolution of the Motion turns on the text of the Policy, which shall be interpreted in accordance with Maryland law.

Maryland law is well settled that "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001); *see Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 540, 921 A.2d 245, 251 (2007); *State Farm Mut. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208, 225-26 (2006); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 537 (2000). Accordingly, "'ordinary principles of contract interpretation apply.'" *Megonnell v. United Servs. Automobile Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772 (2002)

(citation omitted); *see Walk*, 382 Md. at 14, 852 A.2d at 106; *Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556, 769 A.2d 948, 957 (2001).

In "'deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993)). However, the court bears responsibility for ascertaining the scope and limitations of an insurance policy. *See Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001); *Mitchell*, 324 Md. at 56, 595 A.2d at 475.

As the Maryland Court of Appeals has explained, judicial "interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other contract, begins with the language employed by the parties." *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995, 1005 (2003). Generally, Maryland courts "analyze the plain language of [an insurance] contract according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Universal Underwriters Ins. Co.*, 135 Md. App. at 137, 761 A.2d at 1005; *see Capital City*, 788 F.3d at 379 (quoting *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166, 702 A.2d 767, 771 (1997)); *Walk*, 382 Md. at 14-15, 852 A.2d at 106; *Litz v. State Farm Fire and Casualty Co.*, 346 Md. 217, 224, 695 A.2d 566, 569 (1997).

"If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said." *Capital City*, 788 F.3d at 379 (quoting *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013)). "'Unless there is an indication that the parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary,

and accepted meaning.'" *Maryland Cas. Co. v. Blackstone Intern. Ltd.*, 442 Md. 685, 695, 114 A.3d 676, 681 (2015) (quoting *Mitchell*, 324 Md. at 56, 595 A.2d at 475). However, if there is evidence that the parties intended to ascribe a special or technical meaning to certain words used in an insurance contract, those words are construed in accordance with that understanding. *Valliere v. Allstate Insurance Co.*, 324 Md. 139, 142, 596 A.2d 636, 638 (1991) ("When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls."); *see also Walk*, 382 Md. at 14-15, 852 A.2d at 106; *Dutta*, 363 Md. at 556, 769 A.2d at 957.

Moreover, the insurance policy, including endorsements, "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819, 833 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995)); *accord Clendenin Bros.*, 390 Md. at 459, 889 A.2d at 392; *see Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985); *see also Capital City*, 788 F.3d at 379. Moreover, "[i]n general, the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made to construe them harmoniously." *Prince George's Cty. v. Local Gov't Ins. Trust*, 388 Md. 162, 173, 879 A.2d 81, 88 (2005). Indeed, Maryland courts "'will ordinarily avoid interpreting contracts in a way that renders its provisions superfluous.'" *Calomiris v. Woods*, 353 Md. 425, 442, 727 A.2d 358, 366 (1999) (quoting *State Highway v. Bramble*, 351 Md. 226, 237, 717 A.2d 943, 948 (1998)). The court "cannot accept an interpretation that would nullify" one phrase "to substitute it with a contradictory formulation." *Calomiris*, 353 Md. at 442, 727 A.2d at 366.

If the court deems the provisions of an insurance policy unambiguous, the meaning of the terms is determined by the court as a matter of law. *Clendenin Bros. Inc*., 390 Md. at 459, 889 A.2d at 393; *see Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 118 (4th Cir. 2012). In that circumstance, "'a court has no alternative but to enforce those terms.'" *Megonnell*, 368 Md. at 655, 796 A.2d at 772 (quoting *Dutta,* 363 Md. at 557, 556 A.2d at 1138). But, if a contractual term is ambiguous, the court may consult "extrinsic sources" to ascertain the meaning. *Cole*, 359 Md. at 305, 753 A.2d at 537. A policy term is considered "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Id.* at 306, 753 A.2d at 537.

"'[U]nlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer.'" *Capital City*, 788 F.3d at 379 (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97, 699 A.2d 482, 494 (1997)); *see Megonnell*, 368 Md. at 655, 796 A.2d at 771; *Bushey v. Nothern Assurance Co. of America*, 362 Md. 626, 632, 766 A.2d 598, 601 (2001); *Collier v. MD-Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992). But, "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists." *Clendenin Bros.*, 390 Md. at 459-60, 889 A.2d at 394; *see Callaway*, 375 Md. at 280, 825 A.2d at 1005-06 ("[W]hen a term in an insurance policy is found to be ambiguous, the court will construe that term against the drafter of the contract which is usually the insurer."). In other words, where ambiguous language remains, the court "construe[s] that language 'liberally in favor of the insured and against the insurer *as drafter of the instrument.*'" *Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 481-83, 113 A.3d 595, 603-05 (2015) (emphasis in original) (quoting *Megonnell*, 368 Md. at 655, 796 A.2d at 772).

## B.    Duty To Defend

Maryland law recognizes "an insurance company's duty to defend its insured for all claims which are potentially covered under an insurance policy."  *Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 682; *see Walk*, 382 Md. at 15, 852 A.2d at 106.  "'Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, **the insurer still must defend if there is a potentiality that the claim could be covered by the policy**.'"  *Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 682 (emphasis in original) (quoting *Brohawn*, 276 Md. at 408, 347 A.2d at 850).

Certainly, "an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer." *Moscarillo*, 398 Md. at 541, 921 A.2d at 252 (quoting *Aetna Casualty & Surety Co. v. Cochran*, 337 Md. 97, 112, 651 A.2d 859, 866 (1995)).  But, "any doubt as to whether there is a duty to defend . . . is resolved in favor of the insured."  *Walk*, 382 Md. at 16, 852 A.2d at 106-07.  Therefore, the insurer is obligated to defend an insured if "the underlying tort suit . . . *allege*[*s*] action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be."  *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540, 544 (1996) (emphasis in original); *see Cochran*, 337 Md. at 102-03, 651 A.2d at 861.

Under the potentiality rule, if "*any* claims potentially come within the policy coverage, the insurer is obligated to defend *all* claims 'notwithstanding alternative allegations outside the policy's coverage until such times [sic] . . . that the claims have been limited to ones outside the policy coverage.'" *Utica Mut. Ins. Co. v. Miller*, 130 Md. App. 373, 383, 746 A.2d 935, 940 (2000) (alteration in original) (emphasis added) (quoting *Southern Md. Agric. Assoc., Inc. v. Bituminous Cas. Corp.*, 539 F. Supp. 1295, 1299 (D. Md. 1982)).  "Potentiality of coverage may be shown

through the use of extrinsic evidence so long as the insured shows that there is a reasonable potential that the issue triggering coverage will be generated at trial. *Walk*, 382 Md. at 21, 852 A.2d at 110. Notably, it is the *insured* who may rely on extrinsic evidence. *Sheets*, 342 Md. at 640 n.2, 679 A.2d at 542 n.2 (citing *Cochran*, 337 Md. at 107, 651 A.2d at 863). "The *insurer*, however, may not use such evidence to contest coverage if the allegations in the underlying tort suit sufficiently establish a potentiality of coverage." *Sheets*, 342 Md. at 640 n.2, 679 A.2d at 542 n.2 (emphasis in original).

Determining whether an insurer has a duty to defend is a two-step process. In *Capital City*, 788 F.3d at 379, the Fourth Circuit reiterated two categories of questions to resolve the issue:

> "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue."

(quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981)); *see also Gemini Ins. Co. v. Earth Treks, Inc.*, 728 F. App'x 182, 184-85 (4th Cir. 2018); *Maryland Cas. Co.*, 442 Md. at 696, 114 A.3d at 682.

Therefore, in determining whether an insurer is obligated to defend a tort action, courts applying Maryland law first determine the coverage and defenses under the terms and requirements of the insurance contract, and in accordance with the principles of contract construction, as outlined above. *Capital City*, 788 F.3d at 379. As noted, in conducting this analysis, courts apply "ordinary contract principles to insurance contracts." *Id.*; *see Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 681. Thus, the determination of coverage turns on "'the relevant policy provisions.'" *Capital City*, 788 F.3d at 379 (quoting *Perini/Tompkins*, 738 F.3d at 101); *see Local Gov't Ins. Trust*, 388 Md. at 173, 879 A.2d at 88.

When "determining whether an action is covered within the scope of the insurance policy," Maryland courts employ "a three-part burden-shifting scheme[.]"  *CX Reinsurance Co. Ltd. v. Camden Management Services, LLC*, WMN-14-180, 2014 WL 5510914 at *3 (D. Md. Oct. 30, 2014).  First, "the burden of proving entitlement to insurance benefits lies with the insured."  *HSK v. Provident Life & Accident Ins*., 128 F. Supp. 3d 874, 882 (D. Md. 2015); *see Alpha Cons. & Engineering Corp. v. Ins. Co. of Pa.*, 402 Fed. Appx. 818, 831 (4th Cir. 2010) ("The initial burden of proof is placed upon an insured seeking coverage under a policy's insuring language.").  Second, the insurer must demonstrate that the policy excludes coverage of the claim.  *Trice, Geary & Myers, LLC v. Camico Mut. Ins. Co.*, 459 Fed. Appx. 266, 274 (4th Cir. 2011) ("The burden is on the insurer, not the insured, to prove the applicability of an exclusion."); *see also Ace American Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008); *Finci v. Am. Cas. Co. of Reading*, *Pa*., 323 Md. 358, 394, 593 A2d 1069, 1087 (1991) (observing that the insurance company had the burden of proving an exclusion to coverage in its policy).  Third, if the insurance company prevails in showing that the claim is excluded, the insured must prove the applicability of an exception to the exclusion.  *Bao v. Liberty Mut. Fire Ins. Co.*, 535 F. Supp. 2d 532, 535 (D. Md. 2008); *see also* 2 CLAUDE L. STUART, III & EVAN T. CAFFREY, LAW AND PRACTICE OF INS. COVERAGE LITIG. § 23:20 (2016) ("[I]t is generally held in most jurisdictions that while insurers have the burden of proof on the applicability of exclusions, the insured has the burden on demonstrating that its claim falls within an exception to an exclusion.").

### 1. Scope of Coverage

Under the Policy, Nautilus must defend the insured against suits for damages arising from "bodily injury" "caused by an 'occurrence' that takes place in the 'coverage territory' and . . .

occurs during the policy period." ECF 23-2 at 4. An "occurrence" is defined as an "accident," but the word "accident" is an undefined term. *Id.* at 17.

In *Sheets*, *supra*, 342 Md. 634, 679 A.2d 540, the Maryland Court of Appeals considered whether a negligent misrepresentation qualified as an "accident" and therefore constituted an "occurrence" under a CGL policy. Notably, the operative language in the CGL policy is also contained in the Policy in the case *sub judice*. Both policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 646, 679 A.2d at 545; *see* ECF 23-2 at 17. Additionally, both policies fail to define the term "accident." *Sheets*, 342 Md. at 646, 679 A.2d at 545; ECF 23-2.

The *Sheets* Court concluded that an "accident" under an insurance policy occurs "when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.'" *Sheets*, 342 Md. at 652, 679 A.2d at 548 (quoting *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.* 248 Md. 148, 154, 235 A.2d 556, 557 (1967)). In other words, "when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an 'accident' under a general liability policy." *Sheets*, 342 Md. at 652, 679 A.2d at 548. Of relevance here, an "intentional act may nevertheless cause an accidental injury if something unforeseen, unusual and unexpected produces the result." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. City Homes, Inc.,* 719 F. Supp. 2d 605, 613 (D. Md. 2010) (citing *Harleysville*, *supra*, 248 Md. 148, 235 A.2d 556).

In *Sheets*, the court did not adopt an objective standard, which it concluded would render these insurance policies "all but meaningless." 342 Md. at 652, 679 A.2d at 548. The court explained, *id.* at 653, 679 A.2d at 548 (emphases in original):

> Under such an [objective standard], the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively *un*foreseeable or *un*expectable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to

be held liable for unforeseeable or unexpectable damages resulting from his negligence. Thus, interpreting "accident" as encompassing only negligent acts resulting in unforeseeable and unexpectable damages would leave the insured covered against only those damages for which he or she is not likely to be held liable. We decline to adopt such a restrictive construction of the term accident.

Therefore, "under Maryland law, 'an act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage was an event that takes place without [the insured's] foresight or expectation,' a *subjective* rather than objective standard." *Gemini Ins. Co. v. Earth Treks, Inc.*, 260 F. Supp. 3d 467, 477 (D. Md. 2017) (emphasis added) (quoting *USAA Cas. Ins. Co. v. Mummert*, 213 F.Supp.2d 538, 542 (D. Md. 2002)), *aff'd*, 728 F. App'x 182 (4th Cir. 2018). As a result, "damage that *should have* been foreseen or expected by the insured" can still be an "accident." *Sheets*, 342 Md. at 653, 679 A.2d at 548 (emphasis in original).

The *Sheets* Court ultimately concluded that the insurer had a duty to defend the negligent misrepresentation claim. It reasoned that it was "conceivable" that the insured did not anticipate the damage that resulted from the insured's negligent misrepresentation. *See Am. Modern Homes Ins. Co. v. Reeds at Bayview Mobile Home Park, LLC*, 176 Fed. Appx. 363, 366 (4th Cir. 2006) (citing *Sheets*, 342 Md. at 657, 679 A.2d at 551).

Even if an injury is the result of an accident, however, it will not be covered by the Policy if it falls within the Expected or Intended Injury Exclusion or the Battery Exclusion. The Expected or Intended Injury Exclusion states, *id.* at 5: "This insurance does not apply to . . . 'bodily injury' . . . expected or intended from the standpoint of the insured." However, "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." *Id.* ("Reasonable Force Exception").

Here, the Policy contains a Battery Exclusion, included in an endorsement that modifies the Policy and adds the Battery Exclusion to the exclusions section under "Coverage A Bodily

Injury and Property Damage Liability" of the Policy. *Id.* at 19. The Battery Exclusion states, in relevant part: "Regardless of culpability or intent of any person, this insurance does not apply to 'bodily injury' . . . arising out of any: 1. Actual alleged assault or battery; [or] 2. Physical altercation[.]" *Id.* Further, the Battery Exclusion applies to "[a]ll causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such assault or battery, or physical altercation." *Id.*

The Saloon maintains that the Battery Exclusion is subject to the Reasonable Force Exception. ECF 30 at 14. According to 200 West, "any use of 'reasonable force' that caused 'bodily injury' would always be in the context of a 'physical altercation.'" *Id.* at 16. As a result, if the Reasonable Force Exception does not apply to the Battery Exclusion, the Policy would not cover the use of reasonable force. In essence, the Reasonable Force Exception would be rendered "meaningless." *Id.* Therefore, to give effect to both the Reasonable Force Exception and the Battery Exclusion, 200 West maintains that the Reasonable Force Exception should be read to apply to both exclusions. *Id.* at 17.

Nautilus insists that the Reasonable Force Exception does not apply to the Battery Exclusion. As written, the Reasonable Force Exception applies only to the Expected or Intended Injury Exclusion. ECF 31 at 4-5. Further, the Battery Exclusion applies to all injuries resulting from "any actual or alleged assault or battery 'regardless of culpability or intent of any person.'" *Id.* at 5 (quoting ECF 23-2 at 19). As a result, Nautilus claims the Policy excludes coverage for any bodily injury arising from an assault, battery, or physical altercation, regardless of whether the insured used reasonable force. ECF 31 at 4-5.

Further, Nautilus maintains that its reading of the Policy does not invalidate the Reasonable Force Exception. To illustrate the continued effect of the Exception, Nautilus provides a hypothetical example in which the Battery Exclusion would not apply to an insured's use of reasonable force, i.e., the Policy would cover the resulting injury. ECF 31 at 5. In this hypothetical, a store owner places a guard dog inside the store but does not post a warning sign outside the building. *Id.* A thief illegally enters the store, is bitten by the dog, and sues the store owner. According to Nautilus, the dog bite is not excluded by the Policy. Even if the dog bite was expected or intended, the Expected or Intended Injury Exclusion does not apply because the owner used reasonable force to protect his property. And, because the dog bite did not "'necessarily arise out of a "physical altercation,"'" the Battery Exclusion also does not apply. *Id.* (quoting ECF 30 at 16).

I agree with 200 West's interpretation of the Policy. This Court must endeavor to construe the Battery Exclusion and the Reasonable Force Exception harmoniously, so as to give meaning and effect to each of the Policy's provisions. *Prince George's Cty.*, 388 Md. at 173, 879 A.2d at 88. Under 200 West's interpretation, the Battery Exclusion applies to all injuries resulting from an insured's use of *unreasonable* force in an altercation, assault, or battery. This interpretation gives effect to the Battery Exclusion without unduly limiting the scope of the Reasonable Force Exception. *Id.* ("If the endorsement conflicts with the main policy, the endorsement controls.").

In contrast, Nautilus's construction of the Policy would essentially read the Reasonable Force Exclusion out of the Policy. Although Nautilus arguably finds an example in which the Reasonable Force Exception is not rendered meaningless, its example represents an extremely unusual, if not unlikely, scenario. ECF 31 at 5. A reasonableness standard, such as "the use of *reasonable* force to protect persons or property," does not ordinarily refer to such a narrow class

of cases.  ECF 23-2 at 5 (emphasis added); *see also Universal Underwriters Ins. Co.*, 135 Md. App. at 137, 761 A.2d at 1005 (providing that Maryland courts generally "analyze the plain language of [an insurance] contract according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean").  In an insurance policy underwriting "a bar serving alcohol and employing security personnel," "reasonable force" is far more likely to refer to the use of force "to handle unruly customers like King." ECF 31 at 5. Indeed, in the context of a bar, Nautilus's dog-bites-man theory sounds just as rare and far-fetched as the figurative man-bites-dog story.

If Nautilus sought to rescind the Reasonable Force Exception, it should have done so expressly, not by implication.  *Cf. Megonnell*, 368 Md. at 656, 796 A.2d at 772 ("[A]n exclusion by implication is legally insufficient.'") (citation omitted).  And, if for whatever reason it sought to preserve an exception for guard dogs and related uses of force, it could have expressly provided such an exception.  *See White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 502-03, 165 A.3d 624, 637 (2017) (explaining that the insurer, as the drafter of the insurance policy, could have identified explicit limitations in the language of the policy if it intended a more limited scope of coverage).

Even if I were to conclude that the Policy is ambiguous, I would reach the same result. "[W]hen an exclusion lends itself to more than one reasonable interpretation, the exclusion will be construed narrowly against the insurer." *White Pine*, 233 Md. App. at 503, 165 A.3d at 637. The Maryland Court of Appeals instructs, *Megonnell*, 368 Md. at 656, 796 A.2d at 772 (quoting ERIC MILLS HOLMES & MARK S. RHODES, HOLMES'S APPLEMAN ON INSURANCE 276-81 (Eric Mills Holmes ed., 2d ed. 1996) (footnotes omitted) (omissions in original)):

> [T]he exclusion must be conspicuously, plainly and clearly set forth in the policy. An exclusion by implication is legally insufficient. But where the insurer properly and unambiguously uses language in its exclusion, the clear and specific terms must be enforced since the insurer can not be held liable for risks it did not assume. This

is because the insurer may freely limit liability and impose reasonable conditions upon the obligations it assumes by contract, provided that the exclusion does not violate statutory mandates or public policy.

"Where the exclusion or limitation is found to be ambiguous, the legal effect is to find that provision ineffective to remove coverage otherwise granted by the insuring agreements . . . .

. . .

"The terms of the exclusion cannot be extended by interpretation but rather must be given a strict and narrow construction. . . . It has even been held that since exclusions are designed to limit or avoid liability, they will be construed more strictly than coverage clauses and must be construed in favor of a finding of coverage."

Applying a "strict and narrow construction" of the Battery Exclusion, the Court can only conclude that the Battery Exception does not apply to an injury resulting from an insured's use of reasonable force in a physical altercation. *Id*.; *see White Pine*, 233 Md. App. at 503, 165 A.3d at 637 ("Due to the ambiguous nature of the Policy's coverage and limitations, we construe the scope of the Policy's Assault and Battery Exclusion against [the insurer] as the drafter of the Policy. We, therefore, interpret the scope of the Assault and Battery Exclusion narrowly to bar coverage for bodily injuries that arise out of a 'battery.'") (internal citation omitted).

In summary, the Policy covers a bodily injury resulting from "an event that takes place without [the insured's] foresight or expectation" only if the Battery Exclusion and the Expected or Intended Injury Exclusion do not apply. *Sheets*, 342 Md. at 652, 679 A.2d at 548 (citation omitted). Neither exclusion applies when an injury results from "the use of reasonable force to protect persons or property." ECF 23-2 at 5. Therefore, in this case, the Policy covers King's injuries if Woollens used reasonable force against King and did not expect King's injuries to result from that use of force.

## 2.     Allegations Under the Policy

Nautilus and 200 West dispute whether King's injuries resulted from an accident and whether Woollens used reasonable force against King.

### i.

The Court must determine whether the Tort Suit, in at least one count, alleges an injury caused by an accident. As noted, the "[p]otentiality of coverage may be shown through the use of extrinsic evidence so long as the insured shows that there is a reasonable potential that the issue triggering coverage will be generated at trial." *Walk*, 382 Md. at 21, 852 A.2d at 110. To establish a potentiality of a covered accident and therefore an occurrence, it need only be "conceivable" that Woollens did not anticipate the damage resulting from the allegedly tortious conduct. *Am. Modern Homes Ins*, 176 Fed. Appx. at 366.

The Tort Suit alleges that Woollens grabbed King, lifted him into the air, and slammed him onto the concrete pavement, thereby rendering him unconscious. ECF 23-1, ¶ 17. All of the remaining counts against 200 West arise from Woollens's physical altercation with King. The Tort Suit "neither conclusively establishes nor negates a potentiality of coverage." *Cochran*, 337 Md. at 108, 651 A.2d at 864. Accordingly, the Court considers the extrinsic evidence provided by 200 West.

For extrinsic evidence, 200 West primarily relies on its motion for summary judgment in the Tort Suit and the transcript of the summary judgment hearing and oral ruling. *See* ECF 30-2; ECF 30-4. Nautilus counters that "reliance on a summary judgment motion filed in the Underlying Case is improper" because the "information is created by attorneys." ECF 31 at 3. Instead, Nautilus asserts that 200 West should have presented "actual testimony from Trooper Woollens." *Id.*

However, in at least two cases, the Maryland Court of Appeals has relied on the insured's court filings as extrinsic evidence as to the potentiality of coverage. In *Cochran*, 337 Md. at 112, 651 A.2d at 866, the Maryland Court of Appeals treated the insured's complaint in the declaratory judgment suit brought against the insurer—not the tort claimant's complaint in the underlying suit against the insured—as extrinsic evidence. Specifically, the court relied on the insured's assertion that he "fully informed the agents of [the insurer] of the factual details regarding the allegations[.]" *Id.* It also cited the insured's denial that "his actions constituted an assault and battery" because he was engaging in self-defense. *Id.* In *Litz*, 346 Md. at 226-27, 695 A.2d at 570, the court relied, in part, on deposition testimony as extrinsic evidence. Despite the availability of "actual testimony," ECF 31 at 3, the court also relied on the insured's answer to the insurer's complaint in the declaratory judgment action. *Litz*, 346 Md. at 226-27, 695 A.2d at 570.

The Saloon's motion for summary judgment provided that Woollens "executed a take-down technique" on King but "had no intent to cause an injury, only to take [King] down as a quickly as possible to prevent him from causing an injury to those at the scene." ECF 30-2 at 7. Further, according to 200 West, Woollens "did not pick Plaintiff up and slam him on the ground." *Id.*[5] Based on this claim, it is "conceivable" that Woollens did not expect or intend to render King unconscious or seriously injure him in the take down. Accordingly, King's injuries potentially arise from an "accident" under the Policy.

## ii.

All of the claims against 200 West and Woollens arise from a physical altercation between Woollens and King. Accordingly, Nautilus has demonstrated that the Battery Exclusion to the

---

[5] I express no view as to the veracity of such a claim. But, assuming that King suffered the extensive injuries that he alleged, the factfinder might well reject the contention.

Policy applies. *Ace Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008).

Therefore, 200 West now bears the burden of establishing a potentiality that the Reasonable Force Exception to the Battery Exclusion applies here. *Bao*, 535 F. Supp. 2d at 535. Courts have held that exclusions do not apply "to the duty to defend in particular" if "the facts related to the triggering of the exclusion were in dispute, a conclusion consistent with the 'potentially covered' duty to defend rule followed in Maryland." *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, CCB-05-217, 2005 WL 2453002, at *7 (D. Md. Sept. 30, 2005), *aff'd*, 457 F.3d 368 (4th Cir. 2006).

According to 200 West, Woollens ordered King, who was intoxicated, to leave the parking lot. ECF 30-2 at 6. Instead, King "went towards TFC Woollens in an aggressive manner, and stated, 'I don't care if you're a cop, I'll stab you.'" *Id.* (citing *King v. Nauti-Goose Saloon*, Ex. 12, Affidavit of Richard A. Woollens, ¶ 6). As a result, Woollens was allegedly concerned that King may have possessed a "concealed knife or sharp weapon." *Id.* In light of King's "aggressive behavior" and "intoxication" and the "the large number of people" in the area, Woollens believed King "would harm him or other people at the scene." *Id.* As a result, he took King down to secure the area. *Id.*

On summary judgment in the underlying case, the trial court concluded that "the force used by the officer [i.e., Woollens] was reasonable based upon the conduct and language of the plaintiff at the time of the events." ECF 30-4 at 39-40. The court reiterated its conclusion, *id.* at 40: "[U]sing the reasonable officer standard, again, the Court finds that the conduct of the officer was reasonable based upon the threat that was immediately apparent."[6]

---

[6] On appeal, the appellate court may decide that the circuit court usurped the function of the factfinder by deciding disputed material facts, including as to whether the force used was reasonable.

The extrinsic evidence establishes at least a "reasonable potential that a self-defense issue will be generated at trial." *Cochran*, 337 Md. at 112, 651 A.2d at 866.  ECF 30-2 at 6-7; ECF 30-4 at 39-41. Indeed, at summary judgment, Woollens maintained that he used reasonable force, and the circuit court agreed.  ECF 30-4 at 39-40.  Although that ruling is pending on appeal, the outcome of the appeal is of no consequence to Nautilus's duty to defend 200 West; the Saloon need not actually prevail in its defense.  Rather, it need only establish a "'potentiality that the claim could be covered by the policy.'"  *Maryland Cas. Co.*, 442 Md. at 695, 114 A.3d at 682 (quoting *Brohawn*, 276 Md. at 408, 347 A.2d at 850)) (emphasis omitted).

Because 200 West has established that at least one of King's claims is potentially covered under the Policy, Nautilus is not entitled to summary judgment as to its duty to defend 200 West.

Nautilus also claims that it has no duty to defend Woollens.  ECF 31 at 3.  It reasons that because the Clerk has entered a default as to Woollens (ECF 21), 200 West cannot "assert that [Woollens] is entitled to a defense from Nautilus."  *Id.*  It is true that 200 West cannot establish Nautilus's duty to defend Woollens.  But, Nautilus, as the movant, still must demonstrate that it is entitled to an entry of summary judgment, and it has not done so. *See Celotex*, 477 U.S. at 322-24. Accordingly, Nautlius is not entitled to summary judgment as to its duty to defend Woollens.

### C.      Duty To Indemnify

Because the duty to defend is broader than the duty to indemnify, the denial of summary judgment as to Nautilus's duty to defend does not necessarily entail a denial of summary judgment as to Nautilus's duty to indemnify. This is because "the duty to defend depends only upon the facts as alleged" in a tort suit, whereas "the duty to indemnify depends upon liability," so "the duty to defend is broader than the duty to indemnify."  *Walk*, 382 Md. at 15, 852 A.2d at 106.  Therefore, the duty to indemnify turns, first, on whether the insured is found liable in the underlying tort suit;

and second, on whether the actual liability established in the tort suit (as opposed to the potential liability) comes within the scope of policy coverage. *See, e.g.*, *Penn-America Ins. Co. v. Mapp*, 521 F.3d 290, 296-97 (4th Cir. 2008); *Am. & Foreign Ins. Co. v. Mortus*, 198 F. Supp. 2d 717, 719 (D. Md. 2009).

In the Tort Suit, the State trial court granted summary judgment in favor of 200 West, finding that Woollens used reasonable force and 200 West did not engage in negligent hiring. ECF 30-4 at 39-40. However, King noted an appeal to the Maryland Court of Special Appeals, and the appeal remains pending. *See* ECF 23 at 3. If the Court of Special Appeals upholds the trial court's decision, the Saloon will not be liable and Nautilus's duty to indemnify will not be triggered. On the other hand, if the Court of Special Appeals overturns the trial court's ruling, it is uncertain whether Nautilus's duty to indemnify will be triggered. Therefore, at this juncture, the Court is unable to determine whether Nautilus has a duty to indemnify 200 West and Woollens.

## VII.    Conclusion

For the foregoing reasons, plaintiff's Motion shall be denied. An Order follows. However, this ruling is without prejudice to the right of the parties to seek summary judgment based on the outcome of the pending appeal of the Tort Suit.

Accordingly, I will stay this case pending resolution of the appeal. An Order follows.


Date:  March 26, 2019                                   _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge